## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No. 21-cr-589 (RDM)** |
| **v.** | |
| **JOHN JOSEPH RICHTER and JOSEPH IRWIN,** | |
| **Defendants.** | |

### <u>UNITED STATES' TRIAL BRIEF</u>

The United States, by and through its attorneys, respectfully submits this brief summarizing the government's evidence at trial and legal issues that may be brought before the Court.

The defendants are charged in an eight-count indictment for their actions on January 6, 2021. During this trial, and as described below, the government will prove beyond a reasonable doubt that the defendants committed each offense charged in the Third Superseding Indictment, based on evidence including: text messages and social media content prior to January 6, 2021 of the defendants detailing their planning, purpose, and intent for traveling to Washington, D.C. to attend the "Stop the Steal" rally and accompanying objective of ensuring that former President Trump remains in power; video and photographic evidence showing the defendants marching to the Capitol Grounds after listening to speeches detailing the certification process, on restricted Capitol Grounds participating in the breach of the building, and in the Capitol building joining a mob that overran several police lines in order to access the Senate Chamber; testimony from law enforcement witnesses who defended the Capitol on January 6 and who encountered the defendants during the breach of the building and while the defendants occupied the Senate Chamber; and admissions in text messages and social media content made by both defendants

1

detailing their knowledge of the certification process and its participants (including former Vice President Mike Pence) and their efforts to evade law enforcement following January 6, 2021.[1]

## I.   THE JANUARY 6 CAPITOL RIOT AND THE DEFENDANTS' ACTIONS

The evidence will show that, beginning in October 2020, as the presidential election neared, defendants Irwin and Richter began regularly discussing the upcoming election in text message conversations. *See generally* Ex. 518. Both defendants closely followed news regarding the election. For example, the defendants discussed technical issues – like the implication of the 25th Amendment, Ex 518 at 120-126; Constitutional provisions and deadlines, Ex. 518 at 432, 435 (Richter: "The only date set in stone by the constitution is Jan 20th"); and popular political figures – like Mike Pence, Hillary Clinton, Mitch McConnell, and Bill Barr, Ex. 518 at 221-222, 394, 521-55. Irwin and Richter frequently discussed lawsuits regarding the election results. *E.g.*, 518 at 429 (Irwin: "20 states are on board. How can they deny this any longer lol. States are suing states.").

Following the media's announcement of the results of the 2020 presidential election, the defendants frequently discussed perceived election fraud. Ex. 518 at 252, Ex. 557. The defendants discussed fraudulent operation of voting machines, Ex. 518 at 329, 337, and asserted that President-Elect Biden "cheated," Ex. 549.

In mid-December 2020, after the former President Trump announced plans for an election-related rally in Washington, D.C. on January 6, 2021, Irwin responded, "Fuckin right dc." Ex. 518 at 504. Richter said, "He said. Be there. It's gonna be wild." Ex. 518 at 505. Richter followed up with, "Man, George Washington was a beat. 'Nam man. I know it's Christmas Eve, that's why we

---

[1] In an effort to streamline its presentation for this bench trial and focus on the matters in dispute, the government has proposed stipulations of fact, detailed below in Section II(D). The parties are in discussion regarding the stipulations. We intend to have a signed copy of any agreed-upon stipulations at the start of trial on Monday, January 22, 2024.

are crossing the river to kill them in their sleep now. They will never see it coming." Ex. 518 at 506.

The evidence at trial will demonstrate that the defendants continued to discuss plans for January 6. For example, in response to a Tweet from the former president that said, in part, "Statistically impossible to have lost the 2020 Election. Big protest in D.C. on January 6th. Be there, will be wild!," Richter commented, "Muster for liberty. Let's show these liberal soy boys what the sleeping giant looks like when it's up, angry, and ready to fight." Richter also commented, "Time to shine. We will be seeing you. Let's save America. #1776Again #comments #nohatespeech #wethefury #coven45 #hucksarmy." Ex. 518 at 508.

The evidence will show that, as the defendants planned to travel to Washington, D.C. for January 6, they had knowledge of the certification proceedings scheduled on that day, as well as Vice President Pence's role in the certification. For example, Richter sent Irwin the following photo discussing the certification process on January 6 and Mike Pence's role in the certification:



Ex. 518 at 461; Ex. 543.

As the defendants discussed their travel plans to Washington D.C., they discussed the potential for violence and their roles in such. For example, Irwin sent a text message to Richter asking, "Are we go[ing] open militia or innocent/ready bystander." Ex. 518 at 495. Richter responded, "Well I think we are gonna be in a huge crowd mostly. So we will have to be opportunists most likely. Gnome sayin? I like the ready bystander wildcard approach myself." *Id.* at 496.

The defendants also discussed bringing supplies to Washington, D.C., such as flagpoles, goggles, battery banks, and full-face gas masks. Exs. 498, 499, 535. For example, Richter circulated a photo of a metal pointed flagpole that he intended to bring to Washington, D.C.:



*Photo that Richter took of the flagpole and flag that*
*he planned to bring to Washington, D.C.*

Richter explained that he would bring the all-black American flag because "All black flag means no quarter[2] will be given. It's time to do patriot shit," Ex. 518 at 497. Irwin also discussed

---

[2] No quarter means to offer "no pity or mercy" and is "used to say that an enemy, opponent, etc., is treated in a very harsh way." Merriam-Webster, *available at https://www.merriam-*

bringing a wooden pole that he inscribed with a black American flag; he said that his "wooden stick is heavy as fuck." Ex 518 at 131.

The evidence will show that the defendants traveled to Washington, D.C. by car. As planned, they brought their poles and backpacks. After attending the "Stop the Steal" rally, the defendants marched to the Capitol, each with poles in hand. Richter's flagpole was just as he had previewed: a black American flag with pointed metal tip. Irwin carried his heavy wooden pole.



---

*webster.com/dictionary/no%20quarter#:~:text=%3A%20no%20pity%20or%20mercy,no%20quarter%20to%20the%20enemy.*



*Screenshots of video footage showing Richter (red circle) & Irwin (yellow circle) marching towards the U.S Capitol carrying long wooden poles in hand*

After reaching the Capitol grounds, Richter and Irwin joined a mob of rioters on the Lower West Terrace that confronted police line and physical barriers. While carrying their poles, the pair progressed to the front of the mob where a line of police officers fought against violent rioters attempting to break through the police line. The rioters used an array of weapons against the officers. Richter and Irwin ascended to the Upper West Terrace and marched to the Northwest Courtyard.

Around this time, Irwin's wife sent him a text message that said, "What's going on there? Mom texted and said Pence turned against Trump." Ex. 522 at 9.

By this point, Richter had removed the black flag from the pole and dissembled the flagpole into two parts and handed one part to Irwin. *See* ECF No. 65 at 2-3. Irwin placed his other pole in his backpack.



*Screenshot of video footage showing Richter (red circle) and Irwin (yellow circle) outside the Senate Wing Doors (on restricted grounds), each wielding poles with pointed metal tips, while rioters attempted to break through doors and windows*

Richter and Irwin stood near the Senate Wing Door, wielding the metal-pointed tipped flagpoles and watching as rioters attempted to break into the building, as they screamed, "LET US IN! LET US IN! LET US IN!" Richter and Irwin banged their poles on the ground.

Richter and Irwin watched as other rioters smashed the windows and broke into the Capitol through the Parliamentarian's Door. Exs. 412, 510. At about 2:43 p.m. – just minutes after the Parliamentarian's door had been violently breached – defendant Richter and Irwin entered the Capitol building through the door. By this point, both defendants carried pointed metal flag poles that appeared to be half of the flag pole that Richter prepared to bring to the Capitol and severed

into two after removing the black flag. Irwin also carried a now-broken flag pole in his backpack, with the pointed tips facing outward. Ex. 412.



*Screenshot of video footage showing Irwin (yellow circle) approaching the Parliamentarian's door holding a flag pole and carrying a now-broken pole in his backpack*

After entering the Capitol building, Richter immediately began banging his flagpole on the ground and chanting with the crowd, as a nearby rioter used a metal stand to bash through a nearby office door. Exs. 313, 316. Irwin quickly made his way to the front of the pack of rioters where he too joined the chanting. *Id.*

As Richter and Irwin marched down the hall with the mass of rioters, they were stopped by a thin line of officers attempting to keep the growing crowd out of the building. Exs 401, 421, 423. The rioters chanted and yelled, banged flagpoles and other objects on the ground, and demanded access to the building. *Id.*; Ex 404, 410, 430.



*Photos of Irwin, top, joining chants with the rioters as they faced off with police officers guarding the Capitol, left (Ex. 404), and photo showing Irwin wielding a pointed metal pole in the hallway of the Capitol with Richter behind him, right (Ex. 430)*

The mob quickly overwhelmed and overran the police line, and rioters flooded deeper into the building. *Id.*; *see also* Ex. 315. The defendants marched through the Capitol building, ascended a set of stairs, and then entered the Senate Floor, where the former Vice President and members of Congress had been before evacuating under emergency order. Exs. 420, 312.



*Screenshot of Capitol surveillance footage showing Richter (red circle) and Irwin (yellow circle) entering the Senate Chamber with poles in hand*

As the rioters flooded onto the Senate Floor and rustled through the Vice President's desk, Irwin banged his flagpole on the ground and yelled at the top of his lungs, "THIS IS OURS RIGHT HERE! THIS IS OUR HOUSE! THIS IS WHAT THE COURT DO WHEN THE COURT TAKE IT! DON'T GIVE IT BACK TO THEM NOW!" Ex 505.

Irwin and Richter bowed their heads and joined a "prayer" spoken by a rioter at the dais, exclaiming that they were "send[ing] a message to all the tyrants, the communists, and the globalists, that this is our nation, not their, and that we will not allow the America, the American way of the United States of America to go down." Ex. 424. The defendants then celebrated in awe of this declaration. Ex. 426.1.

Irwin and Richter then sat at senators' desks and had their photograph taken by a fellow rioter while brandishing their poles. Ex. 501.



*Screenshot of video footage showing Richter (red circle) and Irwn (yellow circle) wielding metal pointed poles after they entered the Senate Chamber and Senate Floor, while sitting at Senators' desks*

The defendants only left the Senate Chamber and the Capitol building after they were eventually directed out by Metropolitan Police Department Officers. Ex. 303.



*Screenshot of Capitol surveillance footage showing Richter (red circle) and Irwin (yellow circle) exiting the Capitol building, poles in hand*

After their participation in the Capitol riot, the evidence will show that the defendants continued to celebrate their success in halting the congressional proceeding. For example, Irwin framed the sharp wooden pole in a shadow box; he called it a "Relic." Ex. 518 at 595.



Based on their conduct on January 6, Richter and Irwin were each charged with six crimes, including Obstruction of an Official Proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2), 2; Entering and Remaining in a Restricted Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1); and Disorderly and Disruptive

Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of

18 U.S.C. §§ 1752(a)(2) and (b)(1).

## II.      THE GOVERNMENT'S PROOF

### A.      Charges Alleged Against Each Defendant

The Third Superseding Indictment (the "Indictment"), ECF No. 54, charges defendants

Irwin and Richter with six counts each:

1.  Obstruction of an Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2), 2 (Count One (both))

2.  Entering or Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A) (Count Two (Irwin) / Count Three (Richter))

3.  Disorderly or Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon (Count Four (Irwin) / Count Five (Richter))

4.  Entering and Remaining on a Floor of Congress, in violation of 40 U.S.C. § 40 U.S.C. 5104(e)(2)(A) (Count Six (both))

5.  Disorderly Conduct in a Capitol Building, in violation of 18 U.S.C. § 1752(a)(2) (Count Seven (both)); and

6.  Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Eight (both)).

### B.      Elements of the Crimes Alleged

The Government submits the following proposed elements for each count:

1.  <u>Count One: 18 U.S.C. §§ 1512(c)(2), 2</u>

Count One of the Indictment charges the defendants with corruptly Obstructing An Official

Proceeding, which is a violation of federal law.  Count One also charges the defendants with

Aiding And Abetting others to commit that offense.

Elements

In order to find the defendants guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt as to each defendant:

> First, the defendant attempted to or did obstruct or impede an official proceeding.

> Second, the defendant intended to obstruct or impede the official proceeding.

> Third, the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding.

> Fourth, the defendant acted corruptly.

Definitions

To "obstruct" or "impede" means to block, interfere with, or slow the progress of an official proceeding.

Congress's Joint Session to certify the Electoral College vote on January 6, 2021, was an "official proceeding" as that term is used in this count.[3]  The official proceeding need not be pending or about to be instituted at the time of the offense.  If the official proceeding was not pending or about to be instituted, the government must prove beyond a reasonable doubt that the official proceeding was reasonably foreseeable to the defendant.[4]

---

[3] *United States v. Fischer*, 64 F.4th 329, 342 (D.C. Cir. 2023) (holding "that congressional certification of the Electoral College count is an 'official proceeding'" for purposes of § 1512(c)(2)); *see also* 18 U.S.C. § 1515(a)(1)(B) (defining "official proceeding" to include "a proceeding before the Congress").

[4] 18 U.S.C. § 1512(f)(1) ("For the purposes of this section—(1) an official proceeding need not be pending or about to be instituted at the time of the offense").  For the nexus requirement (that the official proceeding need be reasonably foreseeable), see *United States v. Sandlin*, 575 F. Supp. 3d 16, 32 (D.D.C. 2021); *United States v. Aguilar*, 515 U.S. 593, 599-600 (1995).  For other January 6 trials that have used a similar instruction, see, *e.g.*, *United States v. Reffitt*, 21-cr-32 (DLF) (ECF No. 119 at 25-26), *United States v. Robertson*, 21-cr-34 (CRC) (ECF No. 86 at 12), *affirmed at* 86 F.4th 355 (D.C. Cir. 2023), *United States v. Thompson*, 21-cr-161 (RBW) (ECF No. 832 at 26),

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant acted knowingly, the Court may consider all of the evidence, including what the defendant did, said, or perceived.[5]

To act "corruptly," the defendant must use independently unlawful means or act with an unlawful purpose, or both.[6] The defendant must also act with "consciousness of wrongdoing." "Consciousness of wrongdoing" means with an understanding or awareness that what the person is doing is wrong or unlawful.

Not all attempts to obstruct or impede an official proceeding involve acting corruptly. For example, a witness in a court proceeding may refuse to testify by invoking his or her constitutional privilege against self-incrimination, thereby obstructing or impeding the proceeding, but that person does not act corruptly. In contrast, an individual who obstructs or impedes a court

---

*United States v. Williams*, 21-cr-377 (BAH) (ECF No. 112 at 7); and *United States v. Thomas*, 21-cr-552 (DLF) (ECF No. 150 at 23).

[5] *See* The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit §§ 1512 & 1515(a)(1); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005); *United States v. Carpenter*, 21-cr-305 (JEB) (ECF No. 97 at 11) (including instruction that the evidence to be considered includes "what [the defendant] did, said, or perceived"); *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 9) (same); *United States v. Fellows*, 21-cr-83 (TNM) (ECF No. 140 at 26) (same); *United States v. Gunby*, 21-cr-626 (PLF) (ECF No. 57 at 7 (holding, in a January 6 case charging offenses under 18 U.S.C. § 1752 and 40 U.S.C. § 5104, that "what [the defendant] witnessed is directly relevant to his knowledge and intent") (citing *United States v. Griffith*, 21-cr-244, 2023 WL 2043223, at *3 (D.D.C. Feb. 16, 2023) and *United States v. Rhine*, 21-cr-687, 2023 WL 2072450, at *7 (D.D.C. Feb. 17, 2023)).

[6] In *United States v. Robertson*, 86 F.4th 355 (D.C. Cir. 2023), the district court adopted a jury instruction that largely mirrored this proposed definition of "corruptly." *Id.* at 362. On appeal, the D.C. Circuit stated: "[T]he district court correctly informed the jury that it could find that Robertson acted 'corruptly' if the government proved that he 'use[d] [independently] unlawful means' when he obstructed, impeded, or influenced the Electoral College vote certification. . . . Defining 'corruptly' as 'wrongfully' — and treating independently unlawful conduct as 'wrongful' — provides an objective measure of culpable conduct that is straightforward to apply: A court or a jury can easily determine whether the evidence shows that a defendant took unlawful action to obstruct, impede, or influence the proceeding." *Id.* at 369.

proceeding by bribing a witness to refuse to testify in that proceeding, or by engaging in other independently unlawful conduct, does act corruptly.[7] One way of acting corruptly involves acting with the intent to secure an unlawful advantage or benefit either for oneself or for another person.[8]

While the defendant must act with intent to obstruct the official proceeding, this need not be his sole purpose. A defendant's unlawful intent to obstruct an official proceeding is not negated by the simultaneous presence of another purpose for his conduct.[9]

---

[7] The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit; *Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005); *United States v. Fischer*, 64 F.4th 329, 340 (D.C. Cir. 2023) (opinion of Pan, J.); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013); *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013); *United States v. North*, 910 F.2d 843, 883 (D.C. Cir. 1990), *withdrawn and superseded in part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990); *United States v. Sandlin*, 575 F. Supp. 3d 16, 32 (D.D.C. 2021); *United States v. Caldwell*, 581 F. Supp. 3d 1, 19-20 (D.D.C. 2021); *United States v. Mostofsky*, 579 F. Supp. 3d 9, 26 (D.D.C. 2021); *United States v. Montgomery*, 578 F. Supp. 3d 54, 82 (D.D.C. 2021); *United States v. Lonich*, 23 F.4th 881, 902-03 (9th Cir. 2022).  For other January 6 trials that have used similar instructions, see, *e.g.*, *United States v. Williams*, 21-cr-377 (BAH) (ECF No. 112 at 7), *United States v. Reffitt*, 21-cr-32 (DLF) (ECF No. 119 at 25-29), and *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 10).

[8] "[T]here are many ways to prove 'corruptly[,]'" *United States v. Robertson*, 86 F.4th 355, 373 n.8 (D.C. Cir. 2023); this is merely one way.  *See id.* at 374 ("Acting 'dishonestly' would be consistent with the ordinary meaning of acting 'corruptly.' . . . Likewise, a defendant's obstructive conduct may often seek to secure an unlawful benefit for himself or another, such as preventing negative testimony at a trial."). This formulation, which *Robertson* found was not required but which incorporates aspects of the lead and concurring opinions in *United States v. Fischer*, 64 F.4th 329, 340 (D.C. Cir. 2023) (opinion of Pan, J.); *id.* at 352 (Walker, J., concurring), was provided in *United States v. Nordean, et al.*, 21-cr-175 (TJK) (ECF No. 767 at 31-32), *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 10), *United States v. Thomas*, 21-cr-552 (DLF) (ECF No. 150 at 24), *United States v. Fellows*, 21-cr-83 (TNM) (ECF No. 140 at 27), and *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 28).

[9] *United States v. Carpenter*, 21-cr-305 (JEB) (ECF No. 97 at 11); *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 10); *United States v. Fellows*, 21-cr-83 (TNM) (ECF No. 140 at 27); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 29).

2.      Counts Two and Three: 18 U.S.C. § 1752(a)(1) and (b)(1)(A)

Counts Two and Three of the Indictment charge defendant Irwin and defendant Richter, respectively, with Entering And Remaining In A Restricted Building Or Grounds With A Deadly Or Dangerous Weapon, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

Second, the defendant did so knowingly.

Third, the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.[10]

Definitions

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

The term "knowingly" has the same meaning described in the instructions for Count One.

An object may be considered a "deadly or dangerous weapon" for one of two reasons. First, an object is a deadly or dangerous weapon if it is inherently or obviously dangerous or deadly. Second, an object is a deadly or dangerous weapon if the object is capable of causing serious bodily

---

[10] *United States v. Jensen*, 21-cr-6 (TJK) (ECF No. 97 at 34); *United States v. Schwartz, et al*, 21-cr-178 (APM) (ECF No. 172 at 24).

injury or death to another person and the defendant carried it with the intent that it be used in a manner capable of causing serious bodily injury or death.[11] The defendant need not have actually used the object in that manner.

<u>Lesser-Included Offense</u>

In order to find the defendant guilty of the lesser offense of Count Two or Three, that is, Entering Or Remaining In A Restricted Building Or Grounds, the Court must find the following elements beyond a reasonable doubt:

First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

Second, the defendant did so knowingly.

3.   <u>Counts Four and Five: 18 U.S.C. § 1752(a)(2) and (b)(1)(A)</u>

Counts Four and Five of the Indictment charge defendant Irwin and defendant Richter, respectively, with Disorderly Or Disruptive Conduct In A Restricted Building Or Grounds With A Deadly Or Dangerous Weapon, which is a violation of federal law.

<u>Elements</u>

In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

---

[11] *See United States v. Christie*, 23-cr-5 (APM) (Order, ECF 64, at 3) (defining "deadly or dangerous weapon" under 1752(b)(1)(A) and noting that unlike for purposes of 18 U.S.C. § 111(b), "[t]he defendant need not have actually used the object in that manner").

Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

Fourth, the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.[12]

Definitions

"Disorderly conduct" is conduct that tends to disturb the public peace or undermine public safety.[13] Disorderly conduct includes when a person acts in such a manner as to cause another person to be in reasonable fear that a person or property in a person's immediate possession is likely to be harmed or taken, uses words likely to produce violence on the part of others, or is unreasonably loud and disruptive under the circumstances.[14]

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.[15]

The term "restricted building or grounds" has the same meanings described in the instructions for Counts Two and Three. The term "knowingly" has the same meanings described in the instructions for Count One. The term "deadly and dangerous weapon" has the same meanings described in the instructions for Count Two and Three.

---

[12] *United States v. Jensen*, 21-cr-6 (TJK) (ECF No. 97 at 37); *United States v. Schwartz, et al,*, 21-cr-178 (APM) (ECF No. 172 at 25); *United States v. Barnett*, 21-cr-38 (CRC) (ECF No. 158 at 22); *United States v. Robertson*, 21-cr-34 (CRC) (ECF No. 86 at 22), *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 16).

[13] *United States v. Grider*, 21-cr-22 (CKK) (ECF No. 150 at 24) ("'[D]isorderly' conduct is that which 'tends to disturb the public peace, offend public morals, or undermine public safety.' 'Disorderly,' *Black's Law Dictionary* (9th ed. 2009); *see also* 'Disorderly,' *Oxford English Dictionary* (2nd ed. 1989) ('Not according to order or rule; in a lawless or unruly way; tumultuously, riotously.')").

[14] *United States v. Schwartz, et al.*, 21-cr-178 (APM) (ECF No. 172 at 27); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 32); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 237-38).

[15] Redbook 6.643.

Lesser-Included Offense

In order to find the defendant guilty of the lesser offense of Counts Four or Five, that is, Disorderly Or Disruptive Conduct In A Restricted Building Or Grounds, the Court must find the following elements beyond a reasonable doubt:

First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

4. Count Six: 40 U.S.C. § 40 U.S.C. 5104(e)(2)(A)

Count Six of the Indictment charges the defendants with Entering Or Remaining On The Floor Of A House Of Congress, which is a violation of federal law.

Elements

In order to find the defendants guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt as to each defendant:

First, the defendant entered or remained on the floor of either House of Congress, or in any cloakroom or lobby adjacent to that floor, without lawful authority to do so.

Second, the defendant acted willfully and knowingly.

Definitions

The term "House of Congress" means the United States Senate or the United States House of Representatives.

20

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law.  "Willfully" does not, however, require proof that the defendant be aware of the specific law or rule that his conduct may be violating.[16]

The term "knowingly" has the same meaning described in the instructions for Count One.

5.   Count Seven: 40 U.S.C. § 5104(e)(2)(D)

Count Seven of the Indictment charges the defendants with Disorderly And Disruptive Conduct In A Capitol Building, which is a violation of federal law.

Elements

In order to find the defendants guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt as to each defendant:

First, the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds.

Second, the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

Third, the defendant acted willfully and knowingly.

Definitions

The term "Capitol Buildings" includes the United States Capitol located at First Street, Southeast, in Washington, D.C.

The "Capitol Grounds" includes the area depicted in Government's Exhibit 101.

The terms "disorderly conduct" and "disruptive conduct" have the same meanings described in the instructions for Counts Four and Five.

---

[16] *See United States v. Bryan*, 524 U.S. 184, 190 (1998).

For purposes of this offense, "the orderly conduct of a session of Congress or either House of Congress" includes the actions of Congress' Joint Session to certify the Electoral College vote.[17]

The term "knowingly" has the same meaning as described in the instructions for Count One. The term "willfully" has the same meaning described in the instructions for Count Six.

   6. <u>Count Eight: 40 U.S.C. § 5104(e)(2)(G)</u>

Count Eight of the Indictment charges the defendants with Parading, Demonstrating, Or Picketing In A Capitol Building, which is a violation of federal law.

<u>Elements</u>

In order to find the defendants guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

   First, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

   Second, the defendant acted willfully and knowingly.

<u>Definitions</u>

The terms "parade" and "picket" have their ordinary meanings.  The term "demonstrate" refers to conduct that would disrupt the orderly business of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.[18]

---

[17] *See United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 17).

[18] *United States v. Barnett*, 21-cr-38 (CRC) (ECF No. 158 at 23); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 44).  *See also Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000).

The term "Capitol Buildings" has the same meaning described in the instructions for Count Seven. The term "knowingly" has the same meaning as described in the instructions for Count One. The term "willfully" has the same meaning described in the instructions for Count Six.

### C.      Stipulated Testimony

The government has proposed submitting the following three transcripts as evidence in this case:

In *United States v. St. Cyr*, 22-cr-185 (Tr. March 7, 2023), the court heard the testimony of United States Secret Service (USSS) Inspector Lanelle Hawa. Inspector Hawa testified regarding the restricted perimeter surrounding the U.S. Capitol building and grounds and the presence of then Vice President Pence and his immediate family within the restricted perimeter from the afternoon of January 6, 2021 until the morning of January 7, 2021.

In *United States v. Hostetter*, 21-cr-392 (Tr. July 6, 2023), the court heard the testimony of Daniel Schwager, who, on January 6, 2021 was the general counsel to the Secretary of the United States Senate. Mr. Schwager testified regarding Congress's Certification of the Electoral College vote (the "Certification proceeding"), including an explanation of the provisions governing the Certification proceeding. Mr. Schwager also testified about the Certification proceeding, as it occurred on January 6 and 7, 2021.

In *United States v. Padilla*, 21-CR-214, the court heard the testimony of Captain Carneyshsa Mendoza. Her testimony, and the exhibits accompanying her testimony, address the timeline of January 6, 2021; the perimeter of the restricted grounds and the barriers, such as bike racks, snow fencing, and "Area Closed" signs; the fact that the Capitol was closed to the public on January 6; the security procedures in place for visitors to the Capitol; the layout of certain parts of the Capitol; and the threat caused by unauthorized individuals in the building.

To save time, and to focus on the matters that will likely be in dispute, the government plans to offer into evidence transcripts of these witnesses' and the accompanying exhibits[19] from the referenced cases as substantive evidence in the government's case-in-chief.

### D.    Trial Stipulations

The government has proposed stipulations to the following facts: (1) a description of the Capitol Building and Grounds; (2) the certification of the electoral college vote; (3) the definition of "official proceeding"; (4) U.S. Capitol Police Officers and Metropolitan Police Department Officers were engaged in their official duties as officers or employees of the United States on January 6, 2021; (5) the operation and maintenance of closed-circuit video monitoring and recording equipment utilized by the USCP on January 6, 2021; (6) authenticity of body worn camera; (7) the authenticity of third party and open source videos; (8) the authenticity of Senate and House floor recordings; (9) the authenticity of C-SPAN footage; (10) the admissibility of a U.S. Capitol Police Montage video; (11) the defendants' identities and presence in the Capitol on January 6, 2021; (12) the accuracy and fairness of a transcript of defendant Irwin's testimony; (13) the proper chain of custody regarding items seized pursuant to lawfully executed search warrants; (14) the use of proper and reliable techniques to extract cell phone data from defendant Irwin's cell phone; and (15) stipulated testimony, as described above in Section II(B). The parties are

---

[19] These transcripts and accompanying exhibits can be found at Government Exhibit 202 and subparts (Captain Carneysha Mendoza); Government Exhibit 203 and subparts (Lanelle Hawa); and Government Exhibit 204 and subparts (Daniel Schwager).

negotiating these proposed stipulations in good faith to limit the number of issues presented at trial.

### E.    Witness Testimony

1.    <u>U.S. Capitol Police</u>

*United States Capitol Police Deputy Chief Thomas M. Loyd:* While the stipulated testimony of Captain Carneyshsa Mendoza will provide many overview facts regarding the Capitol, Deputy Chief Loyd will provide discrete piece of additional testimony regarding security measures in place at the Capitol on January 6. Deputy Chief Loyd will also describe his experience at the riot, including his personal experience in at least one area where the defendant was present. He will describe locations relevant to this case, introduce videos depicting the riot in those areas (CCTV and third-party videos), and establish a timeline for certain relevant events. He is expected to testify regarding the threat and disruption that the riot caused. Finally, Deputy Chief Loyd is expected to testify regarding the safety and security protocols in place at the Capitol building for all visitors who enter the building. Specifically, Deputy Chief Loyd will testify that *all* visitors are required to undergo security screening, including screening for metal objects, upon entering the Capitol building. He is likely to testify about items that visitors are not permitted to bring into the Capitol building – including objects similar to those carried and used by the defendants – and why the Capitol Police deems certain objects inherently or obviously dangerous such that admittance is not permitted.

*United States Capitol Police Sergeant Justin Cohen:* Sergeant Cohen was among the officers who responded to the breach of the Capitol shortly after rioters, including these defendants, breached the Parliamentarian Door. Sergeant Cohen is visible in video footage in the "Brumidi Corridor" – the hallway flooded by the rioters en route to the Senate Chamber. In this

hallway, rioters confronted and overran police officers attempting to keep rioters contained in the hallway. After the rioters pushed past several officer lines, officers retreated and re-established a police line near the North Door. Sergeant Cohen is expected to testify that the rioters were yelling and screaming, banging objects on the ground, and acting aggressive and unruly in the hallway. The rioters quickly amassed near the North Door as they approached Sergeant Cohen and his fellow officers. The officers attempted to direct rioters out of the North Door – an unobstructed nearby entrance – but rioters refused to leave. Sergeant Cohen is expected to testify that with the collective force of the mob, defendants included, rioters successfully pushed past the officer line and flooded deeper into the building towards the Senate Chamber.

*United States Capitol Police Technician Keith Robishaw*:  Technician Robishaw was the lone officer on the Senate Floor when rioters breached the Senate Chamber. Technician Robishaw is expected to testify that the Senate Floor is a sacred place in the Unites States Capitol where USCP officers are not typically permitted. When rioters breached the Senate Floor, Technician Robishaw recognized the immediate risks as he noticed lawmakers' personal effects scattered throughout the Senate Chamber after their emergency evacuation. Technician Robishaw attempted to convince the rioters to leave the area. Technician Robishaw quickly assessed that he was vastly outnumbered by rioters and that rioters had carried weapons into the Senate Chamber. He is expected to testify that he continuously attempted to call for help on his radio, but the radio traffic from the ongoing riot prevented him from getting through. Finally, Technician Robishaw is expected to testify about the disruptive and disorderly conduct of the rioters on the Senate Floor and the inherently and obviously dangerous weapons that rioters carried on the Senate Floor.

2.      Federal Bureau of Investigation

Federal Bureau of Investigation ("FBI") Special Agent Joshua Powers is assigned as the lead case agent in the investigation of Joseph Irwin. SA Powers is expected to testify about the initiation of the investigation into defendant Irwin, including the identification of Irwin, Irwin's presence at the U.S. Capitol and in Washington, D.C. on January 6, and Irwin's participation in the Capitol riot. SA Powers can identify Irwin in video and photographic evidence. He is also expected to testify to evidence extracted from Irwin's cell phone, which is relevant to Irwin's and Richter's intent to obstruct the proceeding, consciousness of wrongdoing, knowledge of the official proceeding, and presence at the Capitol. SA Powers can introduce Irwin's statements before, on, and after January 6. Finally, SA Powers is expected to testify about the actions of Irwin (and Richter) on January 6, including Irwin's (and Richter's) whereabouts, the length of time he spent in certain areas, the path that Irwin (and Richter) took during the breach, and other actions relevant to the charged conduct. Because much of the cell phone content on Irwin's cell phone includes messages between both Irwin and Richter, the government intends to introduce cell phone evidence relevant to both defendants through one agent so as to avoid duplication of the presentation of evidence at trial.

FBI Task Force Officer ("TFO") Jordan Deamorim-Bredeck is assigned as the lead case agent in the investigation of John Joseph Richter. TFO Deamorim-Bredeck is expected to testify about the initiation of the investigation into defendant Richter, including the identification of Richter, Richter's presence at the U.S. Capitol and in Washington, D.C. on January 6, and Richter's participation in the Capitol riot. TFO Deamorim-Bredeck can identify Richter in video and photographic evidence. Finally, to the extent that it is not duplicative of SA Powers' testimony, TFO Deamorim-Bredeck is expected to testify about the actions of Richter on January 6, including

Richter's whereabouts, the length of time he spent in certain areas, the path that Richter took during the breach, and other actions relevant to the charged conduct.

### F.    Video Evidence

The government will present much of its evidence through video that captured the defendants on January 6, 2021. This video evidence can be found in Government Exhibit Series 300 (CCTV and Senate Footage); Series 400 (Third Party and Open Source Footage); Series 500 (Defendant Material); Series 600 (Body Worn Camera Footage); and Series 900 (Enhanced Footage from other Series).

The CCTV and Senate Floor footage shows U.S. Capitol Police, U.S. House, and U.S. Senate video recordings that are regularly maintained on Capitol grounds and inside the Capitol building. This footage will show the defendants entering the Capitol building at 2:43 p.m. (Irwin) and 2:45 p.m. (Richter), Exs. 313, 316; joining the crowd to push past a line of officers near the North Door, Ex. 315; ascending stairs outside the vice president's Senate Chamber office, Ex. 312; entering the Senate Floor, Exs. 301-305; and exiting the building with weapons in hand, Exs. 317-319. *See also generally* 300 Series.

The third party and open source footage shows the defendants attending the "Stop the Steal" rally while the former president and others spoke about election fraud, Exs. 403, 405, 406, 409; marching towards the Capitol with weapons in hand, Exs. 402, 426; entering and remaining on Capitol grounds while the mob attacked a nearby police line on the lower West front, Ex. 411; approaching the Northwest courtyard as rioters attempted to breach the Capitol building, Ex 427; watching and joining in chants as rioters breached the Senate Wing Door and the Parliamentarian's Door, Exs. 408, 412, 413, 414, 415; chanting and banging flag poles on the ground once inside the Capitol building, Exs. 401, 404, 410, 421, 423, 430; ascending to the second floor to approach the

Senate Chamber as rioters chanted "STOP THE STEAL!" and yelled, "What did you think was going to happen?," Ex. 420; and entering onto the Senate Floor, participating in a "prayer" to the "tyrants, the communists, and the globalists," and celebrating overtaking the Capitol with other rioters, Ex. 426. These videos can be authenticated in a variety of ways, including by comparison to defendant Irwin's photographs and videos in Series 500; comparison to Capitol Police Surveillance Footage and U.S. Senate footage from Series 300 videos; and through officer testimony of officers who were in the same area, at the same time, and can attest to the accuracy and fairness of the videos.

The video content in the "Defendant Material" Series 500 shows much of the same actions as Series 300 and 400, but recorded by defendant Irwin. These exhibits show the defendants at the "Stop the Steal" rally, Exs. 502, 503, 504; the defendants on the West front during the riot, Ex. 508; the defendants watching the breach of the Capitol in the Northwest courtyard, Ex. 510; the defendants in the hallway of the Capitol as the mob rushed through police lines, Ex. 511; and the defendants on the Senate Floor, celebrating their success of taking the Capitol and sitting in U.S. Senators' desks, Exs. 501, 505, 507, 512. Many of defendant Irwin's photographs and videos in Series 500 authenticate footage in Series 400.

The body worn camera footage in Series 600 shows Metropolitan Police Department Officers escorting rioters, defendants included, off the Senate Floor. This footage demonstrates that the defendants did not leave the Senate Floor or the Capitol building until law enforcement corralled them out. Ex. 601.

Finally, in Series 900, the government has provided "enhanced" video footage. The source videos are those described above, with the "enhanced" effects of identifiers on the defendants for

ease of presentation. For example, Exhibit 901 is an enhanced version of Exhibit 401 that adds "call outs" to make each defendant, and the weapons they carried, readily identifiable:



  

### G.    Physical Evidence

Law enforcement recovered items relevant to the investigations during the execution of a search warrant in conjunction with defendant Irwin's arrest. Those items include a green jacket consistent with the jacket that Irwin wore on January 6, Exs. 802, 803, 1002; a grey baseball cap consistent with the baseball cap that Irwin wore on January 6, Exs. 806, 807, 1003; and a flagpole consistent with the flagpole that Irwin and Richter carried on January 6, Ex. 801, 1001. The government may seek to introduce the physical evidence or, alternatively, photographs, of these items to establish the identification of defendant Irwin and to reveal the size and the capabilities of the defendants' weapons, which were also discussed in the defendants' text messages as they planned for January 6. *See, e.g.*, Ex. 518 at 496.

The FBI also seized and subsequently executed a search of defendant Irwin's cell phone. The extraction report created by the FBI reveals that Irwin took numerous photos and videos on

January 6, 2021, and used his cell phone to communicate with defendant Richter and others regarding the defendants' travel plans, intentions, conduct, and pride regarding their participation in the Capitol riot. *See generally* Series 500.

### H.  Defendants' Statements

Both defendants consented to interviews with the FBI. The government may introduce the contents of the defendants' statements made during these interviews. *See* Exs. 514, 515. The government may introduce the transcript of defendant Irwin's interview for ease of review. Ex. 513. Because each defendant is an opposing party, his statements are not hearsay when offered by the party opponent (i.e., the government). Fed. R. Evid. 801(d)(2)(A). There is no similar rule allowing the defendant to admit his own statements. Barring an exemption from hearsay (*e.g.*, Rule 801(d)), an exception to the hearsay rule (*e.g.*, Rule 803), or statements made admissible by the Rule of Completeness (Rule 106), the defendant's own statements, when offered by him, are inadmissible hearsay.

## III.  ANTICIPATED DEFENSES AND LEGAL ARGUMENTS

The parties are mutually committed to trying the case expeditiously and without lengthy arguments about objections. The government may nonetheless object to particular portions of exhibits, or particular questions about exhibits.

As it relates to anticipated defenses, the government anticipates that the defendants will argue that they lacked the corrupt intent necessary to prove a violate of Section 1512(c)(2).  In fact, ample evidence will support that element. ECF No. 69. The defense also is likely to argue that the objects carried by the defendants could not constitute deadly or dangerous weapons, as charged in Counts Two, Three, Four, and Five under 18 U.S.C. § 1752(a)(1) and (b)(1)(A), and 18 U.S.C. § 1752(a)(2) and (b)(1)(A). *See* ECF Nos. 71, 72.

These arguments have been fully briefed. *See* ECF Nos. 30, 31, 69, 70 71, 72, 75, 76, 77.

## CONCLUSION

The defendants were early, aggressive, and active participants in the breach of the U.S. Capitol on January 6, 2021. Acting together and with others around them, they corruptly obstructed the joint session of Congress to Certify the Electoral College vote.  At trial, the evidence will prove beyond a reasonable doubt that the defendants committed each offense charged in the Indictment.


Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY:     /s/ *Ashley Akers*
ASHLEY AKERS
Trial Attorney
Capitol Siege Section
MO Bar No. 69601
601 D Street, N.W.
Washington, D.C. 20530
202-353-0521
Ashley.Akers@usdoj.gov

*/s/ Samantha R. Miller*
SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
For the District of Columbia
601 D Street, NW 20530
Samantha.Miller@usdoj.gov