UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-cr-589 (RDM) |
| | : | |
| JOSEPH IRWIN and | : | |
| JOHN JOSEPH RICHTER, | : | |
| | : | |
| Defendants. | : | |

GOVERNMENT'S OMNIBUS REPLY
TO DEFENDANTS' RESPOSNES TO THE GOVERNMENT'S
MOTION TO EXCLUDE EXPERT TESTIMONY

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby replies to the defendants' responses (Irwin's at ECF 128, Richter's at ECF 126) to the government's amended motion to exclude (ECF 127).

As discussed below and in the government's original motion,[1] both experts' testimony should be excluded as improper and unhelpful "diminished responsibility" testimony under Supreme Court and D.C. Circuit precedent.

---

[1] Given the expedited timeline in this matter and the fact that trial re-starts in less than one week, the government has declined to substantively address in detail how the defendants' responses twist the objective evidence. Suffice it to say as follows:

**Irwin**. The most important factual point that Irwin cannot and does not refute, despite the lengthy table on pages 12-15 of his response, is that Irwin was never properly tested for or diagnosed by a qualified Ph.D. psychologist with (a) any residuals of a traumatic brain injury (given a mild TBI, known as a concussion, is not lasting and perpetual), (b) cognitive impairment, or (c) a dissociative form of PTSD. Thus, all references in the table to TBI, cognitive impairment, or dissociative symptoms stem not from a diagnosis by a properly qualified medical professional following neuropsychological testing, but instead from Irwin's self-reporting of his issues. Moreover, he reported no such issues in the most relevant time period: (a) he reported he was in a "good mood" during his therapy session on January 4, 2021 and reported no cognitive deficits or dissociative tendencies, and (b) he never reported *any* PTSD episode *ever* occurring on January 6, 2021 in *any* of his sessions after that date (until this trial).

Put simply, it is irrelevant to the defendants' guilt whether these defendants' lied, omitted facts, colored the truth, or simply "do not recall," due to each defendant's purported PTSD and/or TBI or otherwise, the same 40 seconds of January 6, where Irwin smashed his pole into two pieces after violently swinging it at MPD officers while belligerently screaming at them to "GO HOME!" This Court acknowledged as much: "there's not a false statements claim, or there's nothing – there's not a count in this case in which their memory is relevant." Jan. 23, 2024 Tr. 199:20-22.

However, Richter concedes that this question is the very purpose of Dr. Ouaou's testimony: "Dr. Ouaou's testimony will focus on perception and memory deficits and their effect on Mr. Richter's ability to recall details of January 6th." ECF 126 at 2. Irwin, similarly, states that "Dr. Houchin's testimony is being introduced to assist the trier of fact in determining the veracity of certain information in the case," ECF 128 at 2, and that Dr. Houchin will opine that Irwin's "memories" were affected "[d]ue to the PTSD triggers Mr. Irwin experienced on January 6, 2021[.]" *See* ECF 105 at 1.

---

**Richter.** Similarly, the most important factual point that Richter cannot and does not refute is that Dr. Ouaou's notes show that he largely ignored any analysis of the most relevant time period – in/around January 6, 2021. For example, his 8 pages of handwritten notes show that although he began asking Richter about his conduct on January 6, after Richter reported he got "spun up" as he went up the stairs inside the Capitol building, Dr. Ouaou asked no further questions about the day or the timeframe shortly thereafter.

With respect to Richter's section on the government's expert, Dr. Askenazi, the government notes as follows: (a) Richter's quoted portions of decisions involving Dr. Askenazi show on their face that no court has questioned her credibility (in fact, in *Clinton* and *Riems*, the court agreed with Dr. Askenazi's opinion that the defendant was competent); instead, those decisions show that, on one occasion, the court disagreed with her opinion, ultimately finding the defendant should not receive the death penalty; and (b) the government vehemently disagrees with Richter's footnote 32: a court's prior findings on an expert's credibility go to the heart of assessing an the expert's current credibility and determining how much weight should be given to his testimony. This type of inquiry is not only permissible, it is fundamental to assessing the role, weight, and credibility of a witness, particularly an expert. *See, e.g., United States v. McCauhey III et al.*, 21-cr-40 (TNM), ECF 750 (Tr. of bench trial, where court permitted similar inquiry on cross of defense experts' prior credibility findings).

2

The Supreme Court has been clear that this sort of mental health expert testimony should be excluded: "Rule 702 [ ] requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (citations and quotations omitted). Therefore, the Court and the parties should not expend additional resources belaboring these matters.

Irwin also separately states as follows: "Evidence of the effect of [Irwin's] dissociative symptoms/PTSD on Mr. Irwin's actions during the event on the Upper West Terrance is **not to dispute his overall intent** as to Counts 4 and 6, but to explain his behavior and demeanor in the particular time period." ECF 128 at 2 (emphasis added). Indeed, Irwin's expert disclosure states that Dr. Houchin will opine on how Irwin's PTSD "affected his thoughts, [ ], feelings, sense of surroundings/perception and behavior" on January 6. ECF 105 at 1. Likewise, Richter explicitly states that "Dr. Ouaou's testimony . . . **is not addressing *mens rea*.**" ECF 126 at 4 (emphasis added). He goes on, "Mr. Richter is not presenting evidence to prove that he was unable to appreciate the nature and quality or the wrongfulness of his acts. Nor is he presenting an affirmative defense. Instead, he is presenting expert testimony to explain deficits in a witness's memory and perception." *Id.*

Binding D.C. Circuit precedent makes clear that such evidence is impermissible: "psychological evidence is deemed not relevant" as to general intent, or general intent crimes. *See, e.g.*, *United States v. Rezaq*, 918 F. Supp. 463, 468 (D.D.C. 1996) (collecting cases). Rather, "courts in this Circuit have generally followed the approach [that] . . . the introduction of expert testimony as to abnormal condition [is permitted] if it is relevant to negat[e], or establish the

3

specific mental condition that is an element of the crime.'" *See id.* (quoting *United States v. Brawner*, 471 F.2d 969 (D.C. Cir. 1972)).

For this reason, defendants' proffered testimony is exactly the type that courts in this Circuit are cautioned to be vigilant against: "The concern underlying these cases appears to be to preserve the barrier between *mens rea* testimony and 'diminished responsibility' testimony. Courts typically allow testimony directly about whether the defendant entertained the requisite intent at the time of the crime . . . They are reluctant, however, to allow more general testimony about the defendant's mental condition where it is divorced from the intent elements of the crime[.]" *See United States v. Childress*, 58 F.3d 693, 729 (D.C. Cir. 1995) (citing *United States v. Pohlot*, 827 F.2d 889, 905 (3d Cir.1987)). Indeed, the D.C. Circuit "share[s] the concern that evidence of general mental capacity not be used to persuade [the trier of fact] that a defendant is not responsible for his deliberate and purposeful activity—this usage exceeds the bounds of *mens rea* evidence." *Id.*

Notably, both defendants avoid any discussion of the above and below-cited case law from this District, where courts routinely exclude mental health experts for the very reasons these defendants seek to use them – to discuss generally defendants' behavior, history, and predispositions, without tying those subjects to defendants' *mens rea* or an affirmative defense. For example, in *United States v. Davis*, 863 F.3d 894, 908 (D.C. Cir. 2017), the D.C. Circuit upheld the district court's exclusion of a forensic psychiatrist in a tax fraud case. There, the defendant proffered the forensic psychiatrist to opine that the defendant "suffered from [attention deficit hyperactivity disorder, ADHD], and that people with this disorder are easily distracted and error-prone." *Id.* "This condition, he opined, would not cause a person to make up numbers out of whole cloth as [the defendant] was accused of doing, although, he observed, people with ADHD

'often are prevaricators' or 'liars.'" *Id.* The D.C. Circuit upheld the expert's exclusion, finding the district court appropriately concluded that "the expert's proffer that [ADHD] 'could cause Ms. Davis to have difficulty completing tasks and accurately filling out detailed forms[ ] . . . is precisely the type of 'justification or excuse' evidence that is not permitted" in this Circuit. *See id.* (internal citations omitted). The district court "reasonably concluded that allowing" such testimony would permit the presentation of "theories of defense more akin to justification,' without offering any insight into [the defendant's] *mens rea*." *Id.*

Likewise, in *United States v. Rogers*, 2006 WL 5249745, at *1 (D.D.C. July 17, 2006), the defendant's expert psychologist was excluded because, as here, notice of the defendant's "mental condition defense was prejudicially untimely, support for admission of [the defendant's] expert opinion testimony under *Daubert* [was] insufficient, and his testimony ha[d] limited probative value regarding the defendant's *mens rea* . . . ." *Id.* at *7. More specifically, the court excluded the defendant's psychologist because "[t]he defense ha[d] not demonstrated a sufficient link between the psychological opinions offered and the specific intent element of the crime to make the evidence helpful to the jury or sufficiently relevant." *Id.* at *5. "Although psychological evidence can be used to negate specific intent, [the psychologist's] opinions do not address [the defendant's] specific intent in the actions that allegedly defrauded his victims, but instead focus on his predispositions based on his family history and life experiences and his capacity to function as an elder law attorney." *Id.* at *5. Thus, the expert was rejected because the defendant failed to even attempt to "establish an inability to deceive, the nub of a *mens rea* defense here. It may well be that Rogers was working beyond capacity, but that goes no distance toward negating the proposition that he could and did intentionally make the affirmative misrepresentations alleged in the indictment with the intent to deceive." *Id.*

Just last year, albeit in the change of plea context, this Court recognized the seriousness of a failure to establish such a causal connection between mental health evidence and a defendant's *mens rea*: the defendant "has not even attempted to draw" any "link or relationship between . . . specific psychiatric evidence . . . and the *mens rea* at issue in the case." *United States v. Coleman*, 2023 WL 7173873, at *7-8 (D.D.C. Nov. 1, 2023). "[I]nstead, [he] offers nothing more than ipse dixit. He has presented no evidence or argument about how bipolar disorder, PTSD, or depression—or the failure to take medication for any of these afflictions—might even theoretically interfere with the ability to form the specific intent to conspire to engage in trafficking of minor or to produce child pornography." *Id.*

The same is true here: both defendants **concede** that they are not attempting to connect their experts' testimony to the specific intent elements of the crimes charged. Irwin states that Dr. Houchin's testimony is "not to dispute his overall intent as to Counts 4 and 6, but to explain his behavior and demeanor in the particular time period." ECF 128 at 2 (emphasis added). Richter, for his part, is even more explicit: "Dr. Ouaou's testimony . . . is not addressing *mens rea*." ECF 126 at 4. Instead, the defendants seek to elicit "general mental capacity" evidence in the exact way the D.C. Circuit has forbidden: "to persuade [the trier of fact] that a defendant is not responsible for his deliberate and purposeful activity." *Childress*, 58 F.3d 693 at 729 (citations omitted). For this reason, too, the Court and the parties should not expend additional resources belaboring these matters (particularly where the government was willing to stipulate that PTSD and TBI can lead to memory issues).

In addition, although both defendants include nearly identical string citations to cases they assert stand for the proposition that "[f]ederal courts have long held that mental health experts may testify as to an array of other matters relevant to the prosecution or defense of cases," ECF 126 at

6

13-14, ECF 128 at 16-18, none of those cases present this situation: where experts were retained mid-trial to justify why the defendants failed to disclose to the FBI and to their own lawyers information surrounding their conduct during this particular episode on January 6.

For example, both defendants cite to eyewitness identification cases, false confession cases, and even a battered woman syndrome case, *United States v. Nwoye*, 824 F.3d 1129, 1140 (D.C. Cir. 2016). They cite this case for the following proposition: "the defendant's introduction of a battered woman syndrome expert to 'bolster' the defendant's testimony is appropriate." ECF 126 at 15; ECF 128 at 17, 24. But, no expert testified in that case, and the defendants omitted the main crux of the D.C. Circuit's ruling, which related to a strategy both defendants' here have explicitly forsaken: expert testimony in support of an **affirmative defense**. *See Nwoye*, 824 F.3d 1129 at 1140.

"At trial, Nwoye admitted to participating in the extortion scheme, but said she did so at the direction of Osuagwu [her boyfriend and co-defendant]. Based on that testimony, Nwoye's only possible defense was that she acted under duress." *Id*. "But due in part to trial counsel's failure to present expert testimony on battered woman syndrome, Nwoye was denied a jury instruction on duress. And the District Court specifically precluded Nwoye's counsel from mentioning duress during closing arguments." *Id*. "Thus, the failure of Nwoye's counsel to present expert testimony on battered woman syndrome deprived Nwoye of any viable legal avenue to acquittal." *Id*. It was in this context that the court referenced bolstering credibility:

> The duress instruction would have given jurors a legal basis upon which to vote not guilty. And as discussed above, the expert testimony on battered woman syndrome would have supported both elements of Nwoye's duress defense: the imminence of the threat and the absence of reasonable alternatives. In addition, expert testimony on battered woman syndrome would have bolstered the credibility of Nwoye's testimony about Osuagwu's abuse. Jurors faced with testimony from a battered woman concerning her abuse and its effects may doubt the testimony because they do not believe that a woman subject to such abuse would stay with her abuser

7

without alerting police or others. Expert testimony on battered woman syndrome could have helped Nwoye "dispel the ordinary lay person's perception that a woman in a battering relationship is free to leave at any time."

*Id.* (citations omitted). Again, the defendants do not even attempt to argue here that their experts are testifying in support of an affirmative defense.

Thus, for the reasons cited in the government's original motion, and for all of the above-cited reasons, both experts' testimony should be excluded as improper and unhelpful "diminished responsibility" testimony under Supreme Court and D.C. Circuit precedent.

## CONCLUSION

Therefore, the Court should preclude the defendants' proffered expert testimony.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

BY:  /s/ *Ashley Akers*
ASHLEY AKERS
Trial Attorney
Capitol Siege Section
MO Bar No. 69601
601 D Street, N.W.
Washington, D.C. 20530
202-353-0521
Ashley.Akers@usdoj.gov

SAMANTHA R. MILLER
MATTHEW VIGEANT
Assistant United States Attorney