UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-cr-589 (RDM) |
| | : | |
| JOSEPH IRWIN and | : | |
| JOHN JOSEPH RICHTER, | : | |
| | : | |
| Defendants. | : | |

**UNITED STATES' OPPOSITION TO DEFENDANTS' JOINT MOTION
FOR VIDEO APPEARANCE FOR BENCH TRIAL VERDICT**

On March 21, 2024, merely four business days after the parties confirmed their availability for an April 30 in-person bench verdict in this matter, the defendants jointly moved to appear by video for the April 30 verdict, rather than appearing in-person as scheduled by the Court. ECF 140 ("Def. Mot."). The defendants' stated basis for this request is simple: they wish to avoid the "expense and time associated with" appearing in-person for the Court's verdict—a verdict that will determine whether they committed the felony crimes[1] charged when they traveled to Washington, D.C. and joined a violent mob that attacked the United States Capitol on January 6, 2021. Due to the plain text of Federal Rule of Criminal Procedure 43 and the seriousness of the offense conduct, this Court should require the defendants to be physically present when the verdict is delivered.

**I. Federal Rule of Criminal Procedure 43 Requires The Defendants To Appear In Person For All Stages Of Trial, Including The Verdict**

Rule 43 requires the defendants to be "present"[2] at "every stage of the trial, including . . . the return of the verdict." The defendants concede that their latest request to appear by video runs

---

[1] Notably, the verdict will likely only *confirm their guilt* as to the misdemeanor offenses, given the defendants conceded their guilt at trial as to those crimes.

[2] Overwhelming authority dictates that the meaning of "present" follows the plain, common-sense, dictionary definition as "physical existence in the same place as whatever act is done there." *United States v. Burke*, 345 F.3d 416, 421 n.2 (6th Cir. 2003) (citing cases).

1

directly afoul of this mandate. Def. Mot. at 2 ("Candidly, Federal Rule of Criminal Procedure [ ] 43 requires a defendant's presence for every trial stage, including return of the verdict.") (citing Fed. R. Crim. Pro. 43(a)(2)). Even so, the defendants request that the Court grant this atypical request as a matter of convenience to the defendants. The Court should deny this motion.

Rule 43's requirement that a defendant be present at all stages of trial has been in place since the inception of the Federal Rules of Criminal Procedure, *see* Advisory Comm. Notes, 1944 Adoption, Paragraph 1, and has been a foundational requirement in criminal procedure long before the rules were promogulated. *Diaz v. United States*, 223 U.S. 442, 456 (1912) (it is the right of the defendant, and in the interest of the government, that in felony cases, the defendant shall be "present at all stages of the trial – especially at the rendition of the verdict").

Indeed, courts have long and uniformly recognized the importance of a defendant's in-person appearance at all stages of the criminal proceedings: "the significance of a defendant being physically present for a proceeding . . . cannot be understated." *United States v. Shaver*, Case No. 6:18-cr-00033-GFVT-HAI, 2023 WL 6961552, at *2 (E.D. Kentucky, Oct. 20, 2023) (denying request by defendant to appear via video conference for a sentencing). Courts have recognized the importance of this rule specifically as it relates to the verdict portion of the trial. As one court explained, the reading of the verdict is "perhaps the most critical" stage of the trial from the defendant's perspective. *United States v. Canady*, 126 F.3d 352, 360 (2nd Cir. 1997).

This is no less true following a bench trial. *Id.* at 36 ("We see no reason why a defendant's presence is less critical when the court, instead of the jury, renders its decision as to the ultimate issue of whether the defendant is guilty or innocent."). As the Second Circuit explained in the context of a bench trial verdict, "there is a distinctly useful purpose in ensuring that the pronouncement of the defendant's guilt or innocence by the court is both face-to-face and public.

It assures that the trial court is 'keenly alive to a sense of [its] responsibility and to the importance of [its] function.'" *United States v. Canady*, 126 F.3d 352, 361 (2nd Cir. 1997) (quoting *Walker v. Georgia*, 467 U.S. 39, 46 (1984)).

Moreover, this rule was created in widely accepted recognition of "the intangible benefits and impact of requiring a defendant to appear before a federal judicial officer in a federal courtroom, and [recognizing] what is lost when virtual presence is substituted for actual presence." *See* Advisory Comm. Notes to 2011 Amendment to Fed. R. Crim. P. 43; *Shaver*, 2023 WL 6961552, at *2 ("Being physically present in the courtroom with another has inscrutable effects—a certain human element—that is impossible to replicate through video communications.").

In their motion, the defendants do not meaningfully address how their request comports with these well-established principles, or why granting such a request would further the interests of justice – indeed, it does not. Rather, the primary support for the defendants' motion to appear by video is the anticipated costs of travel to Washington, D.C. Although Rule 43 specifically contemplates allowing participation through video teleconference as an alternative to appearing in person, it does so *only* in *misdemeanor* cases. Consistent with well-established and long-standing precedent, the Rules Committee thus recognized the distinction between misdemeanor and felony cases and drew a line differentiating between the two. Here, the defendants are charged with felonies for their criminal conduct on January 6 and, accordingly, should be required to comply with the rules that apply to felony defendants. *See Valenzuela-Gonzalez v. U.S. Dist. Ct. for Dist. of AZ*, 915 F.2d 1276 (9th Cir. 1990) (holding that arraignment by closed circuit television does not constitute substantial compliance with Rule 43 where the request was made for convenience – rather than necessity).

3

Moreover, the defendants are not the only party that has an interest in appearing in person for all stages of the trial – the government and the public at large, too, have an interest in in-person proceedings. The D.C. Circuit has explained, in the context of sentencing, that although a defendant's right to be present in the courtroom at every stage of his trial is one of the "most basic of the rights guaranteed by the [Sixth Amendment's] Confrontation Clause," the government also has "an independent interest in requiring a public sentencing in order to assure the appearance of justice and to provide a ceremonial ritual at which society pronounces its judgment." *United States v. Lastra*, 973 F.2d 952, 955 (D.C. Cir. 1992) (citations omitted). The same rationale applies to verdicts.

Therefore, the Court should deny the defendants' motion and require the defendants—consistent with longstanding caselaw and Rule 43—to appear in person at the verdict.

## II. The Defendants Cannot Voluntarily Waive Their Appearance As A Matter Of Convenience

Recognizing that the weight of authority dictates a defendant's in-person appearance, the defendants next argue that they may "waive their right to be present" at all stages of the proceeding. Def. Mot. at 3. The defendants' argument is misplaced and misconstrues the law.

Subsection (c) of Rule 43 permits a defendant to waive his continued presence under certain circumstances. Under that subsection, a defendant who was initially present at trial waives the right to be present when (a) the defendant is voluntarily absent after the trial has begun, (b) the defendant is voluntarily absent during sentencing in a noncapital case, or (c) the court warns the defendant that it will remove the defendant from the courtroom for disruptive behavior, but the defendant persists in conduct that justifies removal from the courtroom. Fed. R. Crim. P. 43(c)(1)(A)-(C).

Courts have uniformly recognized that these exceptions *do not* provide a mechanism for a defendant "to waive her presence for ease or preference" – rather, the rule sets forth mechanisms for "continuing trial and sentencing after a culpable act of the defendant [that] would have otherwise jeopardized case progression," such when a defendant flees, *see generally Crosby v. United States*, 506 U.S. 255 (1993), or when a defendant has unruly behavior, *see United States v. Washington*, 705 F.2d 489, 497 n.4 (D.C. Cir. 1983). *See also, e.g.*, *United States v. Gordon*, 829 F.2d 119, 125 n.7 (D.C. Cir. 1987) (collecting cases wherein a defendant "waives" his right to presence by "voluntarily absenting himself at trial," such as when a defendant flees or escapes from custody during the proceedings); *United States v. Khariton*, No. 2:21-cr-018, 2023 WL 3977695 (S.D. Ga. June 13, 2023); *United States v. Walker*, No. 15-2846, 2016 WL 9776580, at *10-11 (D.N.M. Oct. 6, 2016) (The advisory committee has made clear that the waiver rule was "intended, not to allow a defendant to execute an express waiver of presence, but instead to allow sentencing in absentia when a defendant voluntarily flees before sentencing.").

Here, the defendants' desire to participate virtually as a matter of convenience and cost savings plainly falls outside the limited exception contemplated by the rule. And, if the defendants' argument were accepted, the exception—which is intended to be limited to extraordinary and unique scenarios—would swallow the rule. Indeed, a defendant could always cite costs associated with attending trial, particularly when the alleged conduct occurred in a jurisdiction where the defendant does not reside, as a basis to appear virtually or not at all. Such a result is unacceptable.

The defendants should not be permitted to subvert Rule 43 or its limited exceptions, which are plainly not applicable to these circumstances.

### III.  Public Policy Militates In Favor Of The Defendants Appearing In Person For All Stages of Trial, Including the Verdict

Public policy considerations also militate in favor the defendants' in-person appearances. As other courts in this district have recognized, defendants like these—who were able to accommodate the "expense and time associated with" traveling to Washington, D.C. on January 6, 2021 to commit their crimes—should not later be permitted to avoid the consequences of committing those crimes, including expending their own resources and time by taking their case to trial. As Judge Howell has repeatedly recognized, although a court "may permit" a criminal defendant to appear by video for certain court appearances, where that same "[d]efendant was able to travel to Washington, D.C. to engage in the very offense conduct that is the subject of these proceedings," "the interests of justice" are best served by requiring that defendant to appear in person, even if the defendant laments the expense and time associated with that in-person appearance. *See, e.g.*, *United States v. Rossman*, 22-cr-280 (BAH), October 14, 2022 Minute Order (denying defendant's Motion to Proceed With Sentencing via Video, or in the Alternative, to Order the U.S. Marshal to Pay His Travel Expenses to Washington, D.C.); *United States v. Horvath*, 22-cr-192 BAH (same).

Requiring "the defendant to be physically present" at key hearings, such as verdicts and sentencings, also underscores the need "to both reflect the seriousness of the offense and promote respect for the law[.]" *See Rossman*, 22-cr-280 (BAH), October 14, 2022 Minute Order. This is especially true in the context of the attack on the Capitol, "given the seriousness of the underlying offense conduct, in which defendant[s] traveled to this district and participated in breaching the secure perimeter of and entering the U.S. Capitol Building on January 6, 2021, thereby disrupting the official proceeding underway of certification of the 2020 presidential election[.]" *Id.* Here, the defendants' conduct was all the more serious: not only were they were among the limited

number of rioters who made it all the way to the Senate floor—the very space in which the certification was supposed to be taking place—but they did so while wielding the weapons they had fashioned prior to January 6, so that they could be "ready bystanders" if the day turned out to be a "wildcard."

This Court noted the gravity of this particular conduct when it sentenced defendant Paul Hodgkins, who also was among the limited number of rioters who made it to the Senate floor and obstructed the Electoral College Vote. Notably, Hodgkins, like these defendants, also used his flag to symbolize that he had "taken" what he believed was rightfully his. At sentencing, this Court noted as follows:

> Because of the actions of Mr. Hodgkins and others that day, the members of the United States Congress were forced to flee their respective chambers. And I think it's worth pausing for a moment just to think about that. That is an extraordinary event under any circumstances, that the members of the United States Congress are forced to flee the building fearing for their physical safety.
>
> Our elected representatives from both political parties came together that day to perform their constitutional and statutory duty to declare, in the words of the statute, the person elected president. The mob's objective was to stop that from happening. And they succeeded in delaying the solemn act of certifying who, in the words of the 12th Amendment of the Constitution, shall be the president. They did not like what Congress was about to do. Mr. Hodgkins did not like what Congress was about to do. And they were prepared to break the law to prevent Congress from performing its constitutional and statutory duty. That is chilling for many reasons. . . .
>
> [Hodgkins] came that day prepared to defend his position and to engage in whatever needed to be done, even if it placed him at the center of a conflict. He then left the Stop the steal rally and came to the Capitol. As he did so, he had to have seen . . . the mayhem outside and inside the Capitol. He didn't end up there by accident or curiosity. It was obvious, as he approached the Capitol, that he was participating in an ongoing attack. He came to impede the certification of the election . . .
>
> To make matters worse, Mr. Hodgkins stood next to the dais of the United States Senate in the well of the Senate, and he raised a red flag with Trump 2020 in large white letters. The symbolism of that act is unmistakable. He was staking a claim on the floor of the United States Senate, not with the American flag, but with a flag declaring his loyalty to a single individual over the nation. In that act, he captured the threat to democracy that we all witnessed that day.

*United States v. Hodgkins*, 21-cr-0188 (RDM), Sent. Tr. at 68-73.

As shown by the above, to comply with Rule 43 and to reflect the seriousness of the defendants' conduct on January 6, the Court should require the defendants to be physically present when the verdict is delivered.

### IV. The Defendants' Remaining Arguments Are Unavailing

In support of their motion to appear virtually for a portion of the trial, the defendants cite to cases from other circuits and districts, none of which are binding and none of which are compelling here. First, the defendants cite two post-January 6, 2021 cases with vastly different facts than presented here. In *United States v. Gaskin* and *United States v. Durdley*, the defendants were found to be dangerous or disruptive at trial, which led to the defendants' absences from trial. For example, in *United States v. Gaskin*, No. 3:22-CR-98 (SRU), 2024 WL 812361, at *3 (D. Conn. Feb. 25, 2024), the court found as follows:

> Requiring Gaskin's presence in court would threaten the safety of the U.S. Marshals, the jury, court staff, and Gaskin himself. Gaskin has threatened to "defend" himself against the U.S. Marshals "by any [and] all means available to [him] until the cause of death." Gaskin is a man of large stature, who appears strong, and who, according to his counsel, has previously received "serious assault charges involving other inmates" in prison. Moreover, the Acting U.S. Marshal for this District has reached out to me to express deep concern for the safety of the U.S. Marshals in his employ should those U.S. Marshals be required to use force against Gaskin. Accordingly, I conclude that proceeding with Gaskin's trial in his absence is necessary for public safety.

(record citations omitted).

Similarly, in *United States v. Durdley*, No. 22-12160, 2023 WL 7547591, at *3 (11th Cir. Nov. 14, 2023), the Eleventh Circuit affirmed the District Court's choice to "remove" the defendant from trial, noting the District Court correctly "concluded that there were at least three constitutionally permissible ways for a trial court to handle a disruptive defendant: (1) bind and

8

gag him, thereby keeping him present; (2) cite him for contempt; or (3) remove him from the courtroom until he promised to properly conduct himself. The court stated that, if any rights were lost—such as the right to confront witnesses—they could be reclaimed as soon as the defendant was willing to act appropriately." (record citations omitted). The Eleventh Circuit then held that "[t]he court did not err in continuing the trial without Durdley's presence because there was no reason to believe that trial would soon occur with his presence, as he was warned the trial would proceed without him if he failed to follow orders and he responded by asking to be removed. Additionally, each time the district court removed Durdley, it informed him that he could return if he wished. At the sentencing hearings, Durdley lost his right to be present by interrupting the judge and failing to follow the court's order to answer its questions." *Id.*

These cases, which fall under one of the above-noted exceptions to Rule 43, are not analogous to the facts here. Rather, here, the defendants seek an exception to Rule 43 as a matter of cost savings and convenience.

The defendants' reliance on CARES Act cases is similarly unavailing. For example, the defendants cite *United State v. Navarrette*, 88 F.4th 672 (7th Cir. 2023), which addressed a defendant's right to be in person during sentencing under the COVID-19-related CARES Act. *See* Def. Mot. at 2. But cases involving the CARES Act are entirely inapposite. As this Court knows, and as the Seventh Circuit explained in its opinion, the CARES Act (which is now obsolete) was enacted in response to the World Health Organization's declaration of COVID-19 as a pandemic. Given the uncertainty surrounding the public health crisis, the CARES Act provided a means by which courts could permit proceedings by video when certain enumerated criteria were met. Thus, *Navarrette* presents wholly different circumstances than the ones presented here.

The defendants do not claim they will threaten violence or will be uncontrollably disruptive at their verdict, nor has the Court made such a finding. The Court also is not operating under the unique circumstances of a global pandemic that might disrupt or otherwise render unsafe an in-person appearance. Therefore, the defendants' reliance on these cases to support their request to appear by video is misplaced. While a defendant's financial constraints may be sympathetic and even understandable, the defendants are part of the criminal justice system and, accordingly, should be required to abide by its rules. This Court has permitted the defendants to appear by video for various stages of the case, including initial appearance (Minute Entry 8/25/21), arraignments (Minute Entry 11/1/2021; Minute Entry 4/3/2023; Minute Entry 6/3/2022), status conferences (Minute Entry 1/4/2022; Minute Entry 8/9/2022; Minute Entry 9/19/2022; Minute Entry 1/9/2023; Minute Entry 1/3/2024), and motions hearings (Minute Entry 9/9/2022; Minute Entry 1/4/2023). But the Rules of Criminal Procedure and case law dictate that trial is different: in felony cases, the defendant shall be "present at all stages of the trial – especially at the rendition of the verdict." This requirement echoes case law precedent as well as the interests of the defendant, the government, and American citizens. *See Diaz*, 223 U.S. at 456.

## CONCLUSION

For the above reasons, the government respectfully requests the Court deny the defendants' Motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

BY:    /s/   *Ashley Akers*
ASHLEY AKERS
Trial Attorney

10

Capitol Siege Section
MO Bar No. 69601
601 D Street, N.W.
Washington, D.C. 20530
202-353-0521
Ashley.Akers@usdoj.gov

SAMANTHA R. MILLER
MATTHEW VIGEANT
Assistant United States Attorney